**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 06105**
carlpost@lawofficeofdanielsnyder.com
**John David Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
    Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANTHONY TRUJILLO,**<br><br>              Plaintiff**,**<br><br>    v.<br><br>**EDWARDS VACUUM  LLC,**<br><br>              Defendant. | Case No. 3:23-cv-764<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>UNLAWFUL EMPLOYMENT ACTIONS ADA, FMLA, and Supplemental State Law Claims |

### PRELIMINARY STATEMENT

1.      This is an action for damages, including compensatory damages, equitable relief, injunctive and declaratory relief, attorneys' fees, costs, and interest.

2.      In this action, Plaintiff brings claims against Defendant for violations of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, the Family Medical Leave Act

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

(FMLA), 29 U.S.C. § 2601 et seq.; as well as supplementary state claims for violations of

ORS 659A.112, ORS 659A.150, et seq. (OFLA), and ORS 659A.030. As alleged herein,

Defendant discriminated and retaliated against Plaintiff because of their disability and for

whistleblowing. Defendant denied Plaintiff reasonable accommodations, failed to engage in the

interactive process, failed to provide reasonable accommodations, and terminated their

employment. Defendant also interfered with Plaintiff's use of their medical leave. Plaintiff seeks

economic and non-economic damages, equitable relief, liquidated damages, attorneys' fees, and

costs.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this lawsuit under both 28 U.S.C.

§§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

4.      Venue is proper in the Portland Division of the District of Oregon under 28 U.S.C.

§ 1391(b) because the claim arose in this Judicial District because a substantial part of the events

giving rise to the claims occurred in Hillsboro, Washington County, Oregon, which is in the

Portland Division.

5.      Plaintiff requests this Court invoke its supplemental jurisdiction under 28 U.S.C.

§ 1367 concerning all causes of action based on Oregon statutory provisions or common law as

the state claims arising from the same nucleus of operative facts as the federal claims.

6.      All preconditions to jurisdiction under 42 U.S.C. §2000e-5 have been satisfied.

7.      On February 25, 2022, Plaintiff filed a complaint of employment discrimination

and retaliation with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI

CRD), case DPEMDP220228-10200, for violation of Oregon employment discrimination law

including disability discrimination in employment, medical leave interference (OFLA),

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

whistleblowing, and other Oregon Unlawful Employment Practices. BOLI CRD acknowledged the complaint was filed on or about March 7, 2022.

8.      On or about March 7, 2022, BOLI CRD co-filed a charge with the Equal Employment Opportunity Commission (EEOC), charge no. 38D-2022-00279.

9.      On February 28, 2023, BOLI CRD issued a notice of substantial evidence of discrimination by the Defendant in DPEMDP220228-10200 concluding that the Defendant denied Plaintiff reasonable accommodations and terminated his employment in violation of ORS 659A.112. On February 28, 2023,  BOLI CRD issued a right-to-sue letter for case no. DPEMDP220228-10200.

10.     On April 26, 2023, the EEOC issued a dismissal and right-to-sue notice for Charge No. 38D-2022-00279.

## PARTIES

11.     Plaintiff Anthony Trujillo ("Plaintiff") is a citizen of the United States of America. At all times relevant, Plaintiff was an employee of Defendant, working in Hillsboro, Washington County, Oregon. At all times material, Plaintiff had a disability.

12.     Defendant Edwards Vacuum LLC (hereafter "Defendant" or "Edwards") is a Delaware limited liability corporation that is qualified to do business in the State of Oregon. Defendant specializes in custom-engineered vacuum pumps and abatement systems. At all times material, Defendant employed more than 50 persons.

## GENERAL FACTUAL ALLEGATIONS

13.     On February 24, 2020, Plaintiff began working as an Assembler for Defendant Edwards through a temporary agency. Plaintiff worked at Defendant's facility in Hillsboro, Oregon.

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

14.    Plaintiff's Assembler job duties were electrical wiring installation, mechanical construction, and packaging of industrial vacuum and chemical abatement equipment. His supervisor was Adam Yakubchak.

15.    In April 2020, Supervisor Adam Yakubchak sent an email to Supervisor Yong Xue recommending Plaintiff for a permanent position in another department.

16.    On April 29, 2020, Plaintiff was interviewed for employment as a regular employee by Human Resources representative Gabriela Casas, Supervisor Yong Xue, and Manager Sanu Sanu Bhagavan Mohammed. Defendant Edwards then offered Plaintiff a job as a regular employee.

17.    On or about June 10, 2020, Defendant hired Plaintiff as a Failure Analysis Technician. Plaintiff's job duties included decontamination and remanufacturing of hazardous chemical processing equipment for the semiconductor industry. His supervisor was Yong Xue.

18.    When Defendant hired Plaintiff, Defendant gave Plaintiff a form in which he could voluntarily disclose that he had a disability. Plaintiff wrote on the form that he had a disability. Plaintiff's disability interferes with the major life activity of sleeping and caused the need for accommodations. Plaintiff submitted the form to Defendant.

19.    On June 25, 2020, Plaintiff made a report or complaint about Defendant's failure to adhere to proper safety.  Plaintiff sent an email complaining of safety violations to Safety Manager Fuad Shaikh and Supervisor Yong Xue, Subject Re: Pump Decon. Plaintiff wrote: "I am extremely concerned about adherence to safety policies. As a result of the above, I do not feel safe in my role. The willful deviations from established safety practices has caused me considerable mental anguish. Seeing the safety of myself and my coworkers being circumvented in order to increase production is extremely disheartening." Plaintiff also sent an email to

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

Supervisor Yong Xue. Plaintiff wrote that Plaintiff was feeling unwell and would be going home.

20.     On September 14, 2020, during forest and wildfire fire season, Plaintiff told Supervisor Yong Xue that Plaintiff would be returning home as the air quality in his department was perceptibly much worse than the outside air due to the extreme levels of wildfire smoke. Plaintiff did not report to work the rest of the week.

21.     On September 30, 2020, Plaintiff made a request to Safety Coordinator, Chris McDermott, for a copy of a report documenting the air quality testing. The report showed that beginning September 15, 2020, air quality in the department Plaintiff worked in was very poor.

22.     On October 7, 2020, Plaintiff was summoned to a meeting referred to as "PTO discussion." Supervisor Yong Xue, Manager Sanu Sanu Bhagavan Mohammed, and Human Resources Manager Justin Stapley were present. They told Plaintiff that he could not take any more time off work at the risk of losing his job, as he had used all of his available Paid Time Off (PTO). Plaintiff replied that he had been forced to use PTO due to safety issues and asked that they view his absences in light of those safety matters.

23.     On January 26, 2021, Plaintiff sent a text message to Supervisor Yong Xue. Plaintiff wrote that he had been having trouble sleeping and was falling asleep on the way to work, so he would not be able to work that day.

24.     On January 29, 2021, Plaintiff sent a text message to Xue. Plaintiff wrote that his sleeplessness was due to a medical condition and that he would be gone that day. Plaintiff continued texting Xue during Plaintiff's medical absence.

25.     On February 16, 2021, at 3:25 p.m., Stapley sent Plaintiff an email. Stapley wrote that Plaintiff was out "for personal reasons" which was incorrect as Plaintiff was off work for his disability.

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

26.     On February 17, 2021, at 8:55 a.m., Xue sent an email to Plaintiff. Xue wrote that Plaintiff's illness "has been severely impacting work for two weeks." Although Plaintiff had been in contact with Xue daily, Xue contacted Plaintiff's emergency contact by telephone, asking her for details about Plaintiff's medical condition. At 6:01 p.m. that day, Plaintiff sent an email reply to Xue asking why Xue had contacted Plaintiff's emergency contact as Plaintiff had been in contact with him daily.

27.     On February 17, 2021, at 2:58 p.m., Plaintiff sent an email to Stapley. Plaintiff wrote that he was confused why Stapley would think he was on personal leave. Plaintiff wrote, "The nature of my absence is medical and relates to a disabling condition." Plaintiff shared the difficulties he had finding a medical provider given insurance changes and Covid-19 shortages and asked for patience as "My condition makes it difficult to manage daily life."

28.     On February 23, 2021, at 11:33 a.m., Stapley sent an email to Plaintiff with a "Letter of Expectation." In that letter, Stapley instructed Plaintiff that Plaintiff had one week to provide doctor's notes or his absence "would be considered a voluntary resignation."

29.     On or about February 26, 2021, Plaintiff requested a leave of absence from Defendant's third-party administrator.

30.     On March 1, 2021, Plaintiff sent an email to Stapley and asked for patience during his leave as medical providers were telling Plaintiff they were "not accepting new patients" or the "first appointment is three months out" and was having difficulty coordinating care.

31.     On March 2, 2021, at 5:29 p.m., Plaintiff sent an email to Stapley. Plaintiff attached a provider's note from an Urgent Walk-in Clinic which discussed the crisis Plaintiff was experiencing and the provider shortage due to Covid-19.

32.     On Monday, March 8, 2021, at 2:48 p.m., Plaintiff sent an email directly to

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

Stapley. Plaintiff attached photos of notes from Plaintiff's primary care doctor. Plaintiff wrote

that he had been prescribed medication and his next appointment was March 22, 2021.

33.    On March 30, 2021, Plaintiff was approved for Oregon Family Leave (OFLA)

effective March 30, 2021.

34.    On May 13, 2021, Plaintiff informed Defendant's third-party leave administrator

that Plaintiff would be returning to work on June 7, 2021. Stapley contacted Plaintiff on May 24,

2021, and June 1, 2021, to inform Plaintiff that Stapley had been notified that Plaintiff planned to

return to work on June 7, 2021. Plaintiff did not return to work on that date because Defendant

required medical clearance. Plaintiff did provide a note from his provider clearing Plaintiff to

return to work on June 14, 2021.

35.    On Friday, June 11, 2021, at 3:47 p.m., Plaintiff requested ADA accommodations

regarding a flexible start time and time off for medical appointments. Plaintiff sent an email to

Stapley. Plaintiff requested ADA accommodations including: "1. Flexible start time due to

medication effects... 2. time off for health appointments..." Stapley refused to allow Plaintiff to

return to work because although Plaintiff had made an accommodation request, Plaintiff's doctor

had not formally made the request. However, on Wednesday, June 16, 2021, at 3:40 p.m., Stapley

sent Plaintiff an email reply. Stapley wrote, "The accommodations you feel are needed as listed

below should be quite manageable."

36.    On Wednesday, June 23, 2021, Plaintiff sent a medical note to Defendant from his

doctor regarding his request for accommodations. The doctor endorsed Plaintiff's request for a

flexible start time and time off to attend medical appointments. Plaintiff attended a meeting with

Human Resources Manager Kay McDonald, Human Resources Generalist Daryl Vojtush,

Supervisor Yong Xue, and Manager Sanu Sanu Bhagavan Mohammed. After this meeting,

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff met separately with Xue and Manager Sanu Sanu Bhagavan Mohammed. They sent Plaintiff home and said they would be in contact with Plaintiff while they processed his accommodation request and cleared him "for safety." Defendant did not return Plaintiff to work.

37.    On Thursday, June 24, 2021, at 10:15 a.m., Plaintiff sent a text to Xue, confirming that Plaintiff had not been paid the bonus issued in April for $1,867.

38.    On Friday, June 30, 2021, Plaintiff sent an email with the subject "Trujillo ADA" to Kay McDonald. In the email, Plaintiff wrote, "Per my managers, they are awaiting a response from HR and safety manager for clearance. I'm not sure what else would be needed as I provided the note as proof as you requested last week..."

39.    On Tuesday, July 6, 2021, at 2:44 p.m., Plaintiff received an email from Kay McDonald. She wrote, "I am working with our benefits team...I'll be in touch, as soon as we've come to an appropriate decision."

40.    On Monday, August 2, 2021, at 6:20 a.m., Plaintiff sent an email to Kay McDonald with the subject "Accommodations request." In the email, Plaintiff wrote, "I am writing to inquire about the status of the accommodation request I submitted on June 11th. Please feel free to contact me if you have any questions. I am willing to provide you with further information, if necessary, in order to process the request and assure the accommodations are put into place quickly."

41.    On Monday, August 2, 2021, Plaintiff sent an email to Xue and Sanu Sanu Bhagavan Mohammed with the subject "Accommodations and return to work." In the email, Plaintiff wrote, "I am writing to inquire about the status of the accommodation request I submitted on June 11th..."

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

42.    On Friday, August 6, 2021, at 5:07 p.m., Plaintiff received an email from Kay McDonald with the subject "Follow-up on Accommodation Request." McDonald wrote, "To better understand exactly what accommodations you might need, I am requesting a second opinion from an occupational medical provider…"

43.    On Friday, August 20, 2021, at 3:12 p.m., Plaintiff sent an email to Kay McDonald. In the email, Plaintiff wrote, "I was sent home without pay after requesting reasonable accommodations which are quite standard fare for my condition. I'm certain my manager has nothing but positive things to say about my work history aside from the time I've been absent for medical or safety reasons."

44.    On Tuesday, August 24, 2021, at 3:49 p.m., Plaintiff received an email from Kay McDonald. She wrote, "I scheduled your appointment for a second medical opinion... I have asked Concentra for an occupational evaluation. Your appointment is scheduled for Thursday, August 26..."

45.    On Wednesday, August 25, 2021, Plaintiff sent an email to Kay McDonald. In the email, Plaintiff wrote, "As you know, I have a disability. I returned to work on June 23, 2021, with a doctor's note for my requested accommodations. I was sent home while the company considered my request for accommodations. I have not been accommodated and I have not been returned to work. I have been off work since June 23, 2021, without pay. I am contacting the Oregon Bureau of Labor and Industries' Civil Rights Division and I am filing a civil rights complaint."

46.    On Wednesday, August 25, 2021, at 3:54 p.m., Plaintiff delivered a written request for the company's personnel records concerning him.

47.    On Thursday, August 26, 2021, Defendant demanded that Plaintiff attend an

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

Independent Medical Examination to determine if he had a qualifying disability. On August 26, 2021, Plaintiff received an email from Kay McDonald. She wrote "… the Company has yet to determine if you are in fact disabled... it believes a second opinion is required... you are expected to attend the appointment. If you fail to do so, you will be subject to discipline, up to and including termination of employment."

48.     On Thursday, August 26, 2021, at 2:00 p.m., Plaintiff attended a "Return to Work" examination at Concentra in Portland, Oregon. This examination was not for treatment and was for an examination at the behest of Defendant. The Concentra doctor who examined Plaintiff said he was given no information as to why Plaintiff was being seen and asked if Plaintiff had been injured or had surgery. Plaintiff told the doctor about Plaintiff's diagnosis and the medication he took. Plaintiff told the doctor about his ADA request from June 2021 which prompted the appointment. The doctor said that Plaintiff was sent to him because his employer could not support accommodations. The Concentra doctor wrote a note recommending a change of medication to a drug that did not cause daytime sedation. The Concentra doctor wrote that Plaintiff could return to work with medication that did not cause sedation.

49.     On Thursday, September 2, 2021, at 1:36 p.m., Plaintiff sent an email with the subject "Trujillo ADA" to Kay McDonald. In the email, Plaintiff wrote "As you know I attended the appointment you made for me at Concentra.... When can I come back to work?"

50.     On Friday, September 3, 2021, at 9:36 a.m., Plaintiff received an email from Kay McDonald. McDonald wrote, "Thanks for the update, and glad to hear that you attended the doctor's appointment with Concentra. What did the doctor tell you about his assessment of your ability to meet the job requirements of the job and any restrictions or changes that you need to make to be eligible to return to work?"

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

51.     On Friday, September 3, 2021, Plaintiff returned to Concentra and requested proof of delivery of his exam results to Defendant Edwards. Plaintiff was told that Defendant had been promptly provided the examination results. Concentra provided two copies of the doctor's reports which had been sent to Defendant. One of the reports had been amended by the Concentra doctor with a cursive note about Plaintiff's medications. The Concentra nurses told Plaintiff that Faud Shaikh, Defendant's Health Safety Ergonomic (HSE) coordinator, had viewed the paperwork and requested clarification, hence the two reports. Plaintiff had previously attended weekly meetings in which Shaikh addressed various safety concerns and ergonomic issues.

52.     On Friday, September 10, 2021, Plaintiff sent an email to Kay McDonald regarding the Concentra exam. Plaintiff wrote, "I have not yet received a response to my records request."

53.     On Wednesday, September 22, 2021, Plaintiff sent an email to Kay McDonald. Plaintiff wrote, "I am still awaiting a response. Please update my return date. I am eager to return to my position. I have also seen a number of positions posted for which I would be qualified..."

54.     On Friday, September 24, 2021, Plaintiff received an email reply from Kay McDonald. She wrote, "We are working on your request for accommodation...."

55.     On September 27, 2021, Defendant sent an email providing an offer of accommodation with a flexible start time and additional leave to attend appointments, provided that Plaintiff contact Human Resources to discuss and agree on a method of implementation. Plaintiff did not see that email at the time.

56.     On Wednesday, October 6, 2021, at 2:15 p.m., Plaintiff received an email from Kay McDonald with the subject "Please Contact Me Regarding Your Return to Work Date." In

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

the email, she made Plaintiff aware of a September 27, 2021, email that Plaintiff had not seen. She wrote, "Please contact me at your earliest convenience."

57.     On Wednesday, October 6, 2021, at 2:49 p.m., Plaintiff sent an email reply to Kay McDonald. Plaintiff wrote, "I must apologize as that first email was missed. Is next Monday the 11th good for my return to work?"

58.     On Wednesday, October 6, 2021, at 2:51 p.m., Plaintiff received an email from Kay McDonald. She wrote, "It could be. I need to talk to you first to discuss with you what the specifics around (sic) what accommodations you need, and what we can provide. Please call me at (xxx)..."

59.     On Wednesday, October 6, 2021, at 3:16 p.m., Plaintiff replied via email to Kay McDonald. Plaintiff wrote, "I do not have cell phone service, and the internet is borrowed. … The email you sent on 9/27 laid the accommodations out plainly so I understand that position and I thank you for accepting my accommodation request as given in June." Defendant should have replied to Plaintiff so that they could work out the details of his return to work. Although Plaintiff was engaging in the interactive process, Defendant arbitrarily broke off the interactive process by not responding to Plaintiff and terminating his employment.

60.     On Friday, October 15, 2021, at 1:10 p.m., Defendant Edwards terminated Plaintiff's employment. Kay McDonald sent an email to Plaintiff in which she wrote that Plaintiff had failed to contact her by telephone. However, on October 6, 2021, Plaintiff informed McDonald that he did not have cell phone service.

61.     On Monday, October 18, 2021, at 11:58 a.m., Plaintiff sent an email to Kay McDonald. Plaintiff wrote, "This is quite sudden, and I would ask the company to reconsider. I was ready to return to work in June and was sent home to wait for over three months. I asked to

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

return again on Monday, October 11, 2021, and was rebuffed; we have had all contact through email since June and I explained my phone did not have service."

62.     On November 18, 2021, Plaintiff made another demand for the bonus which was not paid.

63.     On December 13, 2021, Plaintiff received a copy of the company's personnel records concerning him. Defendant Edwards had deleted Plaintiff's form on which he voluntarily self-identified his disability.

## FIRST CLAIM FOR RELIEF

### (Title I of the ADA, Count I – Discrimination)

64.     Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

65.     At all times material, Defendant was an employer for the purpose of, and subject to, the ADA.

66.     Plaintiff has an impairment, which substantially limits one or more major life activities, has a history or record of such impairment, or was regarded by Defendant as having such impairment.

67.     After Plaintiff disclosed their disability to Defendant, it began to discriminate against them as alleged above. Said discrimination was based on Defendant's failure to reasonably accommodate Plaintiff, disparate treatment, and retaliation.

68.     Plaintiff requested reasonable accommodations from Defendant. Although at times Defendant said it was willing to grant the requested accommodations, the accommodations were de facto denied as Defendant did not return Plaintiff to work for months, demanded Plaintiff attend a defense medical examination, and did not pay Plaintiff while he was off work.

69.     Defendant failed to engage in the interactive process with Plaintiff.

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

70.     At all relevant times, Plaintiff was able to perform the essential functions of their position, with reasonable accommodation.

71.     Defendant discharged Plaintiff.

72.     Defendant's conduct violated 42 U.S.C. § 12112.

73.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**(Title I of the ADA, Count II – Retaliation)**

74.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

75.     Defendant retaliated against Plaintiff for pursuing their rights under the ADA. Such actions by Defendant violate the ADA.

76.     As a result, Plaintiff requests that the Court enjoin Defendant from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement with back pay to Plaintiff payable by Defendant, and any other equitable relief as the court deems appropriate.

**SECOND CLAIM FOR RELIEF**

**(Oregon Disability Discrimination - ORS 659A.103 et seq. and ORS 659A.112)**

77.     Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

78.     Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

79.     The Defendant is an 'employer' as defined in ORS 659A.106.

80.     After Plaintiff disclosed their disability to Defendant, it began to discriminate against them as alleged above. Said discrimination was based on its failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

81.     Defendant failed to engage in the interactive process with Plaintiff.

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

82.    Plaintiff could perform the essential functions of their job with Defendant with or without the reasonable accommodations of allowing Plaintiff to continue to work.

83.    Defendant's refusal to provide reasonable accommodations for Plaintiff's known disability constitutes discrimination against them under ORS 659A.103 et seq.

84.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## THIRD CLAIM FOR RELIEF

## (FMLA – 29 U.S.C. § 2601 et seq.)

85.    Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

86.    Defendant is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

87.    Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks the year before Plaintiff took leave and in the year Plaintiff took leave.

88.    At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

89.    At all times relevant, Defendant employed 50 or more employees within 75 miles of the worksite where Plaintiff performed work for it.

90.    Defendant employed Plaintiff for at least 1,250 hours of service during the 12 months immediately preceding the commencement of the leave.

91.    Defendant employed Plaintiff for more than 12 months before Plaintiff took leave.

92.     At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

93.     Plaintiff took medical leave and family leave protected by FMLA. Defendant approved the leave.

94.     At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

95.     Defendant intentionally interfered with Plaintiff for engaging in the protected activity of taking medical and family leave under FMLA. Defendant refused to allow Plaintiff to return to work and failed pending a medical examination by Defendant's doctor.

96.     Defendant interfered with Plaintiff's request for and use of protected medical leave by taking adverse employment actions against them, including, but not limited to, taking away their job duties, transferring them, and trying to make them quit their job.

97.     As a direct and proximate result of Defendant's interference, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to their economic damages in an amount to be determined at trial.

98.     The Court should enter an order declaring that Defendant violated the FMLA.

99.     To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, they are entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

100.     Plaintiff is entitled to an award of liquidated damages under 29 U.S.C. § 2617(a)(1)(A).

101.     Under 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

102.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date of payment.

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

## FOURTH CLAIM FOR RELIEF

## (OFLA – ORS 659A.150 et. seq.)

103.    Plaintiff re-alleges all above relevant paragraphs as though fully set forth herein.

104.    Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

105.    Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years before Plaintiff took leave.

106.    Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year Plaintiff took leave.

107.    Immediately before commencing family leave, Plaintiff worked for Defendant for more than 180 days.

108.    Plaintiff worked an average of more than 25 hours per week for Defendant during the 180 days immediately preceding the date on which they commenced leave. Defendant approved Plaintiff's medical leave.

109.    At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

110.    Defendant interfered, discriminated, and retaliated against Plaintiff for taking family and medical leave by taking adverse employment actions against them, including, but not limited to, terminating their employment with Defendant.

111.    As a result of Defendant's interference, discrimination, and retaliation against her, Plaintiff suffered and continued to suffer economic losses.

112.    As a result of Defendant's discrimination and retaliation against them, Plaintiff is entitled to equitable relief and back pay.

113.    The Court should enter an order declaring that Defendant violated the OFLA.

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

114.    To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, they are entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

115.    Under ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover their reasonable attorneys' fees and costs, including expert witness fees.

116.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

ORS Chapter 659A.199 and ORS 654.062 – Whistleblower

117.    Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

118.    Plaintiff reported to Defendant violations and conduct that Plaintiff believed were violations of state and federal laws.

119.    Defendant discriminated and retaliated against Plaintiff because of the reports made by Plaintiff.  Defendant's actions violated ORS 659A.199 and 654.062, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

120.    As a result of Defendant's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the relief, damages, attorney fees, costs, and interest as alleged below.

## DAMAGES

121.    Plaintiff is entitled to equitable relief, including, but not limited to, a declaration or order from the Court finding that Defendant violated their statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

122.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

123.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proven at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

124.    Plaintiff requests that the Court enjoin Defendant from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement with back pay to Plaintiff payable by Defendant, and any other equitable relief as the court deems appropriate.

125.    To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, they are entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

126.    Pursuant to 42 U.S.C. § 1988, 42 U.S.C. §2000e-5, ORS 659A.885, ORS 20.107, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

127.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date of payment.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

A       A sum that will fully compensate them for their non-economic damages in a sum that is just as determined by a jury;

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

B      A sum that will fully compensate them for their economic damages in a sum that is just as determined by a jury;

C      Equitable relief, including, but not limited to, reinstatement if they so choose;

D      Liquidated damages;

E      Their costs and disbursements incurred herein;

F      Their attorneys' fees; and

G      For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

DATED: May 25, 2023.

**Law Offices of Daniel Snyder**

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff

PAGE 20 – COMPLAINT AND DEMAND FOR JURY TRIAL